UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Outdoor Technologies, Inc.,  : Case No. 1:06-cv-044
            :
  Plaintiff,      :
            :
vs.           :
            :
Vinyl Visions, LLC,    :
            :
  Defendant.     :

**ORDER**

Before the Court is Defendant's motion for summary judgment (Doc. 26). Plaintiff opposes the motion (Doc. 49), and Defendant has filed its reply (Doc. 62).

**BACKGROUND**

OTI and Vinyl Visions both manufacture and sell vinyl fence products. Vinyl products generally have a tendency to "yellow" or fade with sun exposure. A vinyl fence material that could minimize or eliminate yellowing or fading could therefore be quite valuable in the marketplace.

Vinyl Visions distributed a sales brochure that includes specific anti-yellowing performance claims for its "Maximum+Solarguard" fence, as compared to OTI's Heritage fence and several other competitors' fence products. (The sales brochure in question is Exhibit A to Doc. 6, OTI's motion for temporary restraining order.) OTI then filed a verified complaint against Vinyl Visions, alleging that the advertising

-1-

brochure violates the Lanham Act, 15 U.S.C. §1125, the Ohio Deceptive Trade Practices Act, and common law. (Doc. 1)

OTI initially sought a temporary restraining order prohibiting Vinyl Visions from using or distributing the challenged advertising at a then-pending trade association exhibition in Las Vegas. After a hearing, the Court denied OTI's request for a restraining order, finding that OTI had not established the likelihood of success on the merits of its claim, due to substantive factual disputes about the content of the advertising. (Doc. 24, ½6/06 Hearing Transcript at pp. 29-30) The Court also set a hearing on OTI's request for preliminary injunctive relief for March 21-22. Vinyl Visions then filed an answer to the complaint, and on February 21 filed its motion for summary judgment. OTI withdrew its request for preliminary injunctive relief on March 14. (Doc. 34)

The Advertising Brochure

The top of the challenged tri-fold advertising brochure states in large type, "5 Reasons Why Maximum+Solarguard Is Your Best Choice for Vinyl Fencing." Five statements about product characteristics and quality appear below in column format, with vertical columns across the page for each of the ten competitors' products. Maximum+Solarguard, in the first and widest column, satisfies all five of the statements, indicated by the word "YES" written in its column. None of the competitors' products satisfy

any of the statements, as all other columns have "NO" written in them.  The lowest column, across the bottom of the page, shows two vinyl samples of each manufacturer labeled as "unweathered" and "weathered."  The brochure describes these samples as "Maximum+Solarguard vs. Leading Manufacturers of Vinyl Fencing After Independent Laboratory Testing for Yellowing."  The "weathered" samples for the competitors' products, including OTI's Heritage brand, show various shades of "yellow" while Vinyl Visions' sample is noticeably less so.

OTI alleges that the comparative product statements in Vinyl Visions' advertising brochure are false, misleading and deceptive.  Vinyl Visions' motion for summary judgment contends that each statement is literally true, entitling Vinyl Visions to entry of judgment.

**DISCUSSION**

1.   <u>Summary Judgment Standards</u>.

The standards for summary judgment are well established.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine

issue for trial.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d 399, 404 (6th Cir. 1992); <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), <u>cert. den.</u>, <u>Superior Roll Forming Co. v. InterRoyal Corp.</u>, 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. <u>Anderson</u>, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electric Industries Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. <u>United States v. Diebold Inc.</u>, 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at

250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).  The Supreme Court has held:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...

Id. at 252.  Hence the "'mere possibility'" of a factual dispute will not suffice.  Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992), quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986).

Summary judgment is not appropriate simply because the weight of the evidence favors the moving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 472 (1962). The issue of material fact required "to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Cities Serv. Co., supra, 391 U.S. at 288-89.

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that

-5-

the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

    2.   The Lanham Act.

The Lanham Act (15 U.S.C. §1125) forbids the use of false or misleading advertising.  To state a claim under the Act, plaintiff must establish that (1) defendant made false or misleading statements of fact concerning his own product or that of another; (2) the statement actually, or tends to, deceive a substantial portion of its intended audience; (3) the statement is material, in that it will likely influence the consumer's decisions; (4) the statement was introduced into interstate commerce; and (5) there is some causal link between the statements and plaintiff's harm.  See American Council of Cert. Podiatric Physicians v. Amer. Board of Podiatric Surgery, 185 F.3d 606, 613 (6th Cir. 1999).

A "false or misleading" statement can be either literally false, or it can be literally true yet misleading or confusing. Id. at 614.  Literally false statements violate the Act; Plaintiff need only establish literal falsity to obtain relief, as actual consumer deception is presumed.  For a claim based on a statement that is literally true but misleading or deceptive, Plaintiff must also prove actual consumer deception in order to

-6-

recover. Vinyl Visions asserts that the same standards apply to OTI's claim under the Ohio Deceptive Trade Practices Act (Ohio Rev. Code 4165.01 et seq.), and its claim for common law unfair competition. See, e.g., <u>Hassell v. Chrysler Corp.</u>, 982 F.Supp. 515, 526 (S.D. Ohio 1997). OTI does not dispute, and the Court agrees, that all three claims can be judged under the Lanham Act standards.

The Court will address each of the challenged statements.

1. **Maximum SolarGuard is the Most Weatherable Fence You Can Buy Backed by the Strongest Warranty in the Industry.**

   **... In fact our fence is so durable that it carries the most specific warranty in the business. The warranty gives you a measurable standard to compare your fence to over its lifetime...No other manufacturer offers that!**

This statement appears on the front of the brochure and across from the printed text of the written warranty. Vinyl Visions argues the statements "most weatherable" and "strongest warranty" are mere "puffery" for which no Lanham Act liability can lie. "Puffery" is exaggerated blustering or subjective boasting upon which no reasonable consumer would rely. Citing <u>Pizza Hut v. Papa John's Intl.</u>, 227 F.3d 489, 496-97 (5th Cir. 2000), Vinyl Visions likens these claims to phrases such as "best," "new and improved," or "redesigned and improved," all of which have been held to be puffery. Alternatively, Vinyl Visions argues the claims are literally true, because its Maximum fence is "most weatherable" based on the test results, and because,

-7-

unlike OTI, Vinyl Visions warrants its product against "normal weathering."

**"Strongest Warranty"**

This phrase is not directly linked to the challenged test results depicted in the brochure.  While the overall context of the brochure is certainly the comparative testing, the specific context of the "strongest warranty" claim is the text of the warranty itself.  Vinyl Visions argues that its description of its warranty as the "strongest" is mere puffing, and that no reasonable consumer could be misled or deceived because the warranty itself can be read in its entirety.

The Court agrees that this phrase, as used on the front of the brochure, is puffing that does not violate the Lanham Act.  It is akin to the claim that "less is more," a phrase found to be puffing in <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134 (9th Cir. 1997).  That case involved a comparative ad for turfgrass seed, and a producer's claim that its brand grew more slowly than a competitor's brand, resulting in lower maintenance costs.  The phrase "less is more" was found to be puffing, while the phrase "50% less mowing" used in the same ad was an actionable specific performance claim.

**"Most Weatherable"**

An advertisement boasting that Maximum is the "most weatherable" fence available, standing alone, would likely be mere puffery.  However, in determining whether an advertisement is false, Vinyl Visions admits that the Court must consider the

entire context of the ad, not each sentence or word in isolation. See Southland Sod Farms, 108 F.3d at 1144; Castrol v. Pennzoil Co., 987 F.2d 939, 946 (3rd Cir. 1993). The overall context of the Vinyl Visions brochure is to focus consumer attention on the "yellowing" characteristics of the fence samples, prominently labeled as based upon "Independent Testing" in "The Harshest Outdoor Climates." The claim that its fence is the "most weatherable" must be considered in the context of that testing.

To prove the falsity of product superiority claims explicitly based on product testing, OTI must show either (1) the tests do not establish the proposition asserted in the advertisement, or (2) the tests were not "sufficiently reliable to permit one to conclude with reasonable certainty that they established the proposition for which they were cited." Procter & Gamble Co. v. Chesebrough-Ponds, Inc., 747 F.2d 114, 119 (2nd Cir. 1984). As noted in Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 63 (2nd Cir. 1992):

> . . . the sufficiently reliable standard of course assumes that the tests in question, if reliable, would prove the proposition for which they are cited. If the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden. In such a case, tests which may or may not be 'sufficiently reliable,' are simply irrelevant.

The product samples depicted in the advertisement were tested over a twelve-week period in Arizona by an independent test facility. Vinyl Visions contends that these tests

established that its Maximum fence product "weathered" better than any of its competitors' samples, because it did not yellow nearly as much as any of the others. The brochure consistently equates "weathering" with "yellowing" of the fence. This is reflected in the warranty "against yellowing" and in the "anti-yellowing and fade resistant performance" claims. Vinyl Visions also asserts that its Arizona testing conformed to industry practice and was sufficiently reliable to establish its "most weatherable" claim.

OTI disagrees, noting that "weathering" involves more than anti-yellowing, according to common dictionary meanings of the word. OTI also cites Vinyl Visions' own consumer survey, reflecting concerns about color and fading, but also about durability and impact resistance over the life of a fence as elements of fence "weathering." OTI attacks the Arizona test procedures, contending they did not meet applicable industry ASTM specifications. And OTI suggests that the test results are misleading. OTI's expert Rabinovitch states that the differences between the capstock material used in OTI's and Vinyl Visions' fencing may appear more severe at four months (the length of the Arizona test) as opposed to a year or more, due to the materials' different reactions to ultraviolet exposure over time. OTI submits its own independent product testing results, also conducted in Arizona, reflecting color change readings that vary from those obtained in Vinyl Visions' 12-week Arizona test.

In considering the parties' arguments, the Court notes the

-10-

following issues raised by the record to date:

(1) Vinyl Visions' Reply Brief quotes §4.2 of ASTM D 1435-05 as follows:  "The results of short-term exposure tests can provide an indication of relative outdoor performance."  (See Doc. 62 p. 3)  This quotation is misleadingly incomplete.  Vinyl Visions leaves out a significant qualifier.  The entire section of the ASTM standard states:

> 4.2  The results of short-term exposure tests can provide an indication of relative outdoor performance, but they should not be used to predict the absolute long-term performance of a material.  The results of tests conducted for less than twelve months will depend on the particular season of the year in which they begin.

Vinyl Visions does not discuss the longer-term performance results of its tests, which were started in Arizona in the spring, as opposed to tests started at a different season of the year or in a different climate.

(2) The same ASTM standard, in Sections 4.1 and 4.1.1, contain specific recommendations for using tests conducted under the standard.  Section 4.1 notes that exposure results obtained from one location may not be reliable predictors of durability, and that exposures in several locations representing a broad range of service conditions are recommended.  Section 4.1.1 specifically states that a single exposure test "cannot be used to predict the absolute rate" of degradation of material.  The parties do not discuss whether "degradation" includes "yellowing" or color change, but it could be interpreted in that fashion.

-11-

(3) Vinyl Visions does not discuss ASTM Standard F964-02, establishing material quality requirements for rigid PVC fencing and railing.  OTI and its expert point out that standard requires test exposures of six and twelve months, using separate specimens in three different climates (hot and dry, hot and humid, and northern temperate).  This testing requirement seems to support OTI's assertion that a twelve-week test exposure may not accurately depict weathering over a longer period of time, or over the lifetime of the product.  Nor does Vinyl Visions address the apparently different results OTI obtained from its own Arizona tests.  These differing results and the language of the ASTM standard lend weight to OTI's argument that the twelve-week tests may not be reliable, or even if reliable, may not support the conclusion that Vinyl Visions attributes to them - long term "weatherability."

(4) ASTM Standard F964 treats both color change and impact resistance as part of "weathering."  (A witness who was involved in setting up the challenged Vinyl Visions testing also testified that the "weathering process" involves both physical and color changes in the vinyl fencing.  See Schipper Deposition at p. 119.)  OTI filed with its opposition brief a Rule 56(f) affidavit, stating that OTI recently obtained some impact test results from Vinyl Visions, and that more results may be forthcoming.  Those tests may prove to be germane to evaluating the "most weatherable" claim.  The affidavit also seeks additional time for OTI and its expert to evaluate whether or not

some of the claims are misleading, based upon ongoing discovery.

Ultimately, Vinyl Visions argues that its testing, and its printed brochure, fairly illustrate what happens after sun exposure in accordance with the ASTM test protocol. (Doc. 62 at p. 3) In view of the issues noted above, the Court cannot conclude that there is an absence of material disputed fact on the record presented to date. Vinyl Visions' motion for summary judgment on its test-backed performance claims is denied, without prejudice to renewal at a later date.

2.      **Contains SolarGuard Coating Which Protects Against the Harmful Effects From the Sun.**

        **MAXIMUM - YES       HERITAGE - NO**

Vinyl Visions argues this statement is literally true, as it is undisputed that OTI's Heritage fence does <u>not</u> contain SolarGuard, a trademarked name for Vinyl Visions' coating material. OTI admits the statement is literally true, but argues it is false by necessary implication. The implication to consumers is that Vinyl Visions' product is the **only** product containing **any** kind of UV protection, an implication clearly reinforced by the display of the "weathered" vinyl samples shown in the lower column of the brochure.

The Court finds that OTI implies too much into the statement. There is no dispute that the statement is literally true, and the brochure makes no claim, either explicitly or implicitly, that Maximum is the ONLY product on the market that contains any type of UV protection. The well-developed standard

-13-

articulated by other circuits is that a false-by-necessary-implication claim fails if the statement can reasonably be understood to convey different messages.  See, e.g., <u>Scotts Co. v. United Indus. Corp.</u>, 315 F.3d 264, 274-275 (4th Cir. 2002); and see <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.</u>, 290 F.3d 578, 586-587 (3d Cir. 2002). "Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false." <u>United Indus. Corp. v. The Clorox Co.</u>, 140 F.3d 1175, 1181 (8th Cir. 1998).  The statement about SolarGuard could reasonably be understood in several ways: that only Maximum contains SolarGuard, a formula unique to Vinyl Visions; or that the SolarGuard additive produces "longer lasting color retention" than the competitors' UV protection ingredients (as the brochure claims); or that SolarGuard protects the fence from more UV exposure than other fence products.  The Court therefore concludes that the SolarGuard statement is not literally false, either directly or by implication.

3.      **Lifetime Warranty Against Yellowing**

        **MAXIMUM - YES      HERITAGE - NO**

Vinyl Visions argues that its warranty is in fact a lifetime warranty (albeit a limited one), and that it specifically warrants against "yellowing," a term precisely defined in the warranty itself (where the "b" value exceeds 6, using a BYK-Gardner color/gloss spectrophotometer).  OTI argues that the statement is false because Vinyl Visions does not warrant against

"all" yellowing.  This argument founders on the fact that the advertisement does not claim that Maximum is warranted against "all" yellowing.  The actual warranty specifically defines what is covered.

OTI also argues the statement is false because OTI also offers a lifetime warranty (albeit a limited one) that excludes only "normal and expected weathering."  The brochure's claim that OTI does not offer a "Lifetime Warranty Against Yellowing" is therefore false, argues OTI.  "Normal weathering" is specifically defined in OTI's Heritage warranty as:

> . . . exposure to UV light and extremes of weather and atmosphere which will cause any colored surface to experience changes including but not limited to chalking, fading, or accumulating dirt or stains. Degrees of weathering vary depending on geographical location, air pollution and other factors.  Weathering and color-hold standards are established in ASTM Specifications F964-02.

(A copy of the OTI warranty is attached to the Affidavit of Brian Hammerbacher, Exhibit I to Doc. 49) The ASTM specifications state (Section X1.6) that "Weathering samples should change color only slightly and uniformly.  White PVC will tend to yellow but should not streak or turn brown under exposure in the natural weathering tests."  OTI's warranty therefore does exclude **some** yellowing. For that reason, the Court concludes that the claim is not literally false, with reference to OTI.

However, the Court cannot rule out a false-by-implication argument here, because the parties do not explain what Vinyl

Visions' warranty against yellowing translates to in terms of the
color degradation of the fence.  If the warranty definition
actually covers what OTI describes as "normal and expected
weathering" then the advertising claim is not and cannot be
literally false under any test.

4.      **Lifetime Warranty Extends Beyond "Normal
        Weathering"**

        **MAXIMUM - YES              HERITAGE - NO**

        The differences in the two warranties are noted in the
section above.  Vinyl Visions does not explain whether its
warranty definition of "yellowing" would cover what OTI excludes
– the ASTM standard's description of "normal weathering."
For that reason, the Court cannot find an absence of material
disputed facts concerning this product claim, on the basis of the
record before the Court.

5.      **Anti-Yellowing and Fade Resistant Performance
        Validated by an Independent Testing Firm in
        the Harshest Outdoor Climates.**

        **MAXIMUM - YES              HERITAGE - NO**

        Vinyl Visions contends this is literally true, because its
independent testing firm "validated" the performance claims.
Vinyl Visions argues that those test results are accurately
depicted on the advertising brochure.

        OTI disagrees on several grounds.  OTI regularly tests its
own products through an independent testing firm according to
ASTM standards.  OTI argues that the claim is false by stating

that only Maximum is "independently tested in harshest outdoor climates."

This statement is clearly a performance-backed-by-testing claim.  For the reasons discussed above, the Court will not grant summary judgment at this time on the brochure's test-backed claims.

6.      **Protective Coating Contains a Polymeric Blend Alloy to Keep Your Fence Looking New for a Lifetime.**

        **MAXIMUM - YES            HERITAGE - NO**

Vinyl Visions contends the statement is true, because Maximum uses a "polymeric blend alloy" and OTI's Heritage does not.  Vinyl Visions suggests that if Heritage had such a protective coating, the Heritage sample would not have yellowed as is shown in the advertising brochure.

OTI argues that OTI does in fact use "micro ingredients in its polymer coating" for the Heritage product.  It is not clear to the Court whether a "polymeric alloy" in the fence coating is equivalent to "micro ingredients in a polymer coating."  If in fact these are equivalents, the statement concerning OTI's Heritage fence may be literally false.  If they are not, Vinyl Visions may be entitled to judgment on this claim.  The motion on this claim is therefore denied, without prejudice to renewal at a later date.

7.      **Maximum plus Solarguard VS. Leading**

-17-

**Manufacturers of Vinyl Fencing After
Independent Laboratory Testing for Yellowing**

This column displays the "before and after" samples for each product.  As discussed above, OTI attacks the test results, and also suggests that the actual printed brochure does not accurately reflect the true state of the samples at the end of the twelve-week test.

For the reasons discussed above with respect to the test-backed performance claims, Vinyl Visions' motion is denied on this claim, without prejudice to renewal at a later date.

3.    <u>Tortious Interference with Business Relations</u>.

Count Two of OTI's complaint asserts that the advertisement has interfered with OTI's business relationships with its customers and prospective customers, and has disparaged OTI's fence products.  Vinyl Visions seeks summary judgment on this claim, arguing it fails under applicable Ohio law.

The essential elements of a tortious interference claim are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.  See, e.g., <u>Chandler and Assocs., Inc. v. America's Healthcare Alliance, Inc.</u>, 125 Ohio App. 3d 572, 583 (Ohio Ct. App. 1997) (internal quotations and citations omitted). OTI has not come forward with any facts or evidence that Vinyl Visions' advertisement has caused a breach or termination of any

-18-

OTI business relationship.  At best, OTI alleges that it learned about the Vinyl Visions brochure from its customers.  This is far short of a claim that OTI actually lost, or has been threatened with loss of, any of those customer relationships.

Rule 56 requires a party faced with a summary judgment motion to come forward with some evidence showing a genuine issue of disputed fact.  Neither OTI's opposition brief nor its Rule 56(f) affidavit suggest that OTI has suffered any interruption or termination of a business relationship.  Therefore, the Court will grant summary judgment to Vinyl Visions on the tortious interference claim.

### CONCLUSION

For all of the foregoing reasons, the Court grants Vinyl Visions' motion for summary judgment on Count Two of OTI's Complaint.  The Court grants in part, and denies in part, Vinyl Visions' motion on OTI's Lanham Act claims concerning the advertising statements, without prejudice to renewal.  The Court grants OTI's request under Fed. R. Civ. P. 56(f) for additional time to complete discovery relevant to the summary judgment arguments.


DATED: September 29, 2006        s/Sandra S. Beckwith
                            Sandra S. Beckwith, Chief Judge
                             United States District Court